```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

TEHRAN MUHAMMAD, JR.,

        Petitioner,

        -v-                                 08-CV-0216(MAT)
                                               **ORDER**

DALE ARTUS, Superintendent,

        Respondent.

## I. Introduction

*Pro se* petitioner Tehran Muhammad, Jr., ("petitioner") has filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Erie County Supreme Court of Rape in the First Degree (N.Y. Penal L. § 130.35(1)), and Attempted Burglary in the First Degree (N.Y. Penal L. §§ 110.00, 140.30(3)), following a plea of guilty before Justice Joseph F. Forma. Petitioner was sentenced to concurrent, determinate terms of imprisonment of fifteen years with five years of post-release supervision.

## II. Factual Background and Procedural History

Petitioner's conviction arose out of an incident that occurred on July 22, 2005 in Cheektowaga, New York, wherein petitioner broke into the home of his ex-girlfriend ("the victim") and had forcible sexual intercourse with her at knifepoint. Plea Minutes ("P.M.") at 24-28.

In a counseled brief submitted to the Appellate Division, Fourth Department, petitioner raised four issues for appeal: (1) his waiver of his right to appeal at the plea proceeding was invalid; (2) the court erred in denying petitioner's motion to withdraw his guilty plea; (3) the trial court erred in denying petitioner's motion to substitute counsel; and (4) the sentence was harsh and excessive. See Respondent's Exhibits ("Ex.") B. The Appellate Division unanimously affirmed the judgment of conviction. People v. Muhammad, 41 A.D.3d 1282 (4th Dept. 2007); lv. denied, 9 N.Y.3d 879 (2007).

The instant habeas petition followed (Dkt. #1), wherein petitioner raises the same claims as he did on direct appeal. See Petition ("Pet.") ¶12 (1)-(4). For the reasons that follow, I find that petitioner is not entitled to the writ, and the petition is dismissed.

**III. Discussion**

   **A. General Principles Applicable to Federal Habeas Review**

      **1. Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not dicta) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness

3

such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.  Merits of the Petition**

    **1.  Invalid Waiver of Right to Appeal**

In ground one of the petition, petitioner argues that his waiver of appeal was invalid because the lower court did not ensure that his waiver was voluntary, knowing, and intelligent. Pet. ¶ 12(1). The Appellate Division rejected this contention:

> [D]efendant contends that his waiver of the
> right to appeal was invalid. We reject that

> contention. During the plea colloquy, defendant indicated that he understood that he had the right to appeal and had discussed that right with his attorney, that the appellate court could address legal error and could order a variety of legal remedies, including dismissal of the indictment. He further indicated that he was giving up his right to appeal as a condition of his plea, of his own free will.

Muhammad, 41 A.D.3d at 1283 (citation omitted).

The right to appeal is not a constitutional right, but rather "purely a creature of statute." Abney v. United States, 431 U.S. 651, 656 (1977); accord Jones v. Barnes, 463 U.S. 745, 751(1983). Moreover, it is well-settled that waivers of the right to appeal set forth in plea agreements are generally constitutional. See Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001) ("We have long enforced waivers of direct appeal rights in plea agreements ...."). While it is true that an appeal waiver must be knowing, voluntary and intelligent, Steele v. Filion, 377 F.Supp.2d 332, 334-35 (W.D.N.Y. 2005) (citing United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001)), petitioner does not point to, nor is the Court aware of, any federal precedent standing for the proposition that the trial court must employ specific language when apprising a defendant pleading guilty of the individual rights eschewed. To that end, petitioner has not set forth an error of constitutional magnitude. See Salaam v. Giambruno, 559 F.Supp.2d 292 (W.D.N.Y. 2008) (petitioner's claim that his waiver of appellate rights was invalid because the trial court "did not ask

petitioner to explain in his own words his understanding of what this waiver meant" did not state a basis for habeas relief); Nicholas v. Smith, No. 02 CV 6411(ARR), 2007 WL 1213417, at *10-11 (E.D.N.Y. Apr. 24, 2007) (rejecting habeas petitioner's argument that the state court's failure to make perfectly clear that petitioner was being asked to waive his right to appeal as part of his plea bargain, rather than forfeiting it as a matter of law as part of the guilty plea); Underwood v. Graham, No. 06-CV-0674T, 2010 WL 184315 at *3-*4 (W.D.N.Y., Jan. 15 2010)(petitioner's contention that "the trial court's language was ambiguous in that it implied that appellate review might become available subsequent to the sentencing date" did not establish a violation of a constitutional right).

Moreover, petitioner has not established that his waiver of appeal was invalid under state law. See People v. Lopez, 6 N.Y.3d 248, 256 (2006) (for a waiver of the right to appeal to be valid, the defendant must understand that the right to appeal is separate and distinct from those rights automatically forfeited upon a plea of guilty). It is clear from the record that the trial court engaged a thorough colloquy to ensure that petitioner made a knowing, voluntary, and intelligent waiver of his appellate rights. During the plea proceeding, petitioner acknowledged on the record that he understood that: (1) he had the right to appeal to a higher court; (2) he had discussed that right with his attorney; (3) the

higher court could look for legal error and could order a variety of legal remedies; (5) he was giving up that right, as a condition of the plea agreement, of his own free will; and (6) no one coerced or forced petitioner to give up his right to appeal. P.M. at 28-30.

For the aforementioned reasons, petitioner has failed to show that the state court's enforcement of the waiver of his appellate rights denied him of any rights under the federal constitution, and this claim is therefore dismissed.

### 2. Trial Court Erred in Denying Petitioner's Motion to Withdraw Guilty Plea

In ground two, petitioner asserts that the state court erred in denying his motion to withdraw his plea. Pet. ¶ 12(2). The Appellate Division held that the trial court did not abuse its discretion in denying petitioner's motion:

> In denying the motion, the court rejected the contention of defendant that he was "confused" and that his attorney had told him to plead guilty. The prosecutor recounted both the overwhelming evidence against defendant, including his confession, and the circumstances of the plea. The court additionally ordered the plea transcript and, upon reviewing it, the court noted that it had been careful to ensure that defendant's plea was freely and knowingly given.

Muhammad, 41 A.D.3d at 1283.

Due process requires that a guilty plea be voluntary, knowing, and intelligent. See e.g., Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005). "The standard for determining the validity of a guilty plea

is 'whether the plea represents a voluntary intelligent choice among alternative courses of action open to the defendant.'" Urena v. People of the State of N.Y., 160 F.Supp.2d 606, 610 (S.D.N.Y. 2001) (quoting Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992)). "A plea is 'intelligent' and 'voluntary' when a defendant had the advice of counsel, understood the consequences of his plea and the plea was not physically or mentally coerced." Heron v. People of the State of N.Y., 98 Civ. 7941(WHP), 1999 WL 1125059, at *5 (S.D.N.Y. Dec. 8, 1999). A "plea of guilty entered by one fully aware of the direct consequences of the plea is voluntary in a constitutional sense unless induced by threats, misrepresentations, or perhaps by promises that are by their nature improper." Bousley v. United States, 523 U.S. 614, 619 (1998) (quotation marks omitted).

As he did on direct appeal, petitioner argues that he had been confused and was told to plead guilty by his attorney. See Ex. B at 6; Sentencing Minutes ("S.M.") at 16-17. It is well-settled, however, that a "voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Bousley, 523 U.S. at 621, (quotation omitted); accord, e.g., Bradshaw, 545 U.S. at 186. Moreover, statements made at plea allocutions "carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977).

The record belies petitioner's assertion that his plea was coerced or otherwise involuntary. The record indicates that the trial court considered petitioner's *pro se* motion to withdraw his plea at sentencing, despite that his motion was unclear and, in large part, conclusory. <u>See</u> S.M. at 16-20. During that proceeding, the prosecutor recounted the overwhelming evidence against the petitioner, as well as the circumstances of his plea, which involved thorough discussions between petitioner, his attorney, and his father regarding how petitioner should proceed. <u>Id.</u> at 17-20. The transcripts of the plea proceeding also indicate that the trial court engaged in an extensive colloquy to ensure that petitioner's plea was freely and knowingly given, and specifically, that petitioner had not been coerced into pleading guilty. <u>Id.</u> at 20, P.M. at 17-19. In sum, the record belies petitioner's claim that his attorney somehow coerced him into pleading guilty. <u>See</u> <u>United States v. Davis</u>, 48 Fed. Appx. 809, 811-12 (2d Cir. 2002) ("During his plea allocution, [defendant] admitted his guilt under oath and in his own words, and stated that his plea was free and voluntary, that no threats or untoward promises had been made to induce his plea, and that he was satisfied with the advice of counsel.... Although since his guilty plea [defendant] has consistently protested his innocence of the charges [and claims his counsel coerced him to plead guilty], a

claim of innocence [and coercion by counsel] is not a basis for withdrawing a guilty plea unless supported by evidence.").

Moreover, the record reflects that petitioner received a favorable disposition. Petitioner, initially charged with Rape in the First Degree (N.Y. Penal L. § 130.35(1)), Burglary in the First Degree (N.Y. Penal L. § 140.30(3)), and Robbery in the First Degree (N.Y. Penal L. § 140.30(3)), faced an aggregate sentence of over forty years if convicted. S.M. at 6. The prosecutor testified that case was one of overwhelming evidence against the petitioner, including: (1) a sworn confession to police by petitioner; (2) petitioner was found with the victim's property on his person at the time of his arrest; (3) a barbeque grill that was recovered from the property, which petitioner used to gain entry to the victim's window; and (4) the window through which petitioner entered was dusted for fingerprints. S.M. at 18. In sum, the reduced sentence of fifteen years that petitioner received in exchange for his guilty plea "underscore[s] the voluntariness and validity" of petitioner's plea. Eber-Schmid v. Cuomo, Nos. 09 Civ. 8036, 09 Civ. 8038, 2010 WL 1640905 at *16 (S.D.N.Y. April 22, 2010); see also, Donaldson v. Lape, No. 06 CV 0727, 2010 WL 301914 at *7 (W.D.N.Y. Jan. 19, 2010) ("Where, as here, 'a petitioner secured a significant strategic benefit by pleading guilty, courts [in this Circuit] are generally less likely to suspect an involuntary or misguided decision to plead.'").

For the reasons set forth above, the Appellate Division's decision was not contrary to, or an unreasonable application of Supreme Court precedent, and this claim is denied.

### 3. Denial of Right to Counsel

Petitioner claims that the trial court erred when it denied his motion for new counsel, thereby depriving him of his Sixth Amendment right to counsel. Pet. ¶ 12(3). The Appellate Division concluded that "defendant did not establish the requisite good cause for the substitution of counsel, nor has he alleged, much less established, that the purportedly tainted proceeding during which the court examined his request for substitution of counsel had any effect on the case as a whole." Muhammad, 41 A.D.3d at 1283 (citations and quotations omitted).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. However, "the right to choose one's own counsel is not absolute." United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004) (citations omitted). Rather, "[t]he Sixth Amendment guarantees a criminal defendant an effective advocate, not necessarily the advocate of his or her choosing." Id. (citation omitted). "Because the right to counsel of one's choice is not absolute, a trial court may require a defendant to proceed to trial with counsel not of defendant's choosing; although it may not compel defendant to proceed with

incompetent counsel." United States v. Schmidt, 105 F.3d 82, 89 (2d Cir. 1997).

Whether or not to permit substitution of counsel is within the discretion of the trial judge and turns on the facts of the case. See McKee v. Harris, 649 F.2d 927, 931 (2d Cir. 1981). It is not sufficient for a defendant simply to request a new lawyer. "[A] defendant seeking substitution of assigned counsel . . . must afford the court with legitimate reasons for the lack of confidence." McKee, 649 F.2d at 932. "'In order to warrant a substitution of counsel during trial, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict.'" Id. at 931 (quoting United States v. Calabro, 467 F.2d 973, 986 (2d Cir. 1972)).

In evaluating whether a trial court abused its discretion in denying a defendant's motion for substitution of counsel, the Second Circuit has looked at the following factors: the timeliness of the defendant's motion; adequacy of the trial court's inquiry into the defendant's complaint about counsel; and whether the attorney/client conflict was "'so great that it had resulted in total lack of communication preventing an adequate defense.'" United States v. Simeonov, 252 F.3d 238, 241 (2d Cir. 2001) (quoting Morris v. Slappy, 461 U.S. 1, 13 (1983)); accord United States v. John Doe No. 1, 272 F.3d 116, 122 (2d Cir. 2001).

At sentencing, petitioner moved for new counsel on the grounds that his attorney, James Lazarus, Esq. ("Lazarus"), had not consulted with petitioner sufficiently, had not apprised petitioner of the evidence against him, and failed to hire an investigator for petitioner's case. S.M. at 14-16. Lazarus told the trial court that he sent two letters to his client and met with him approximately five to six times regarding his case. S.M. at. 10-11. He further acknowledged that he reviewed the evidence against petitioner, discussed with his client "[petitioner's] perception of what his understanding of the relationship was versus what I had been advised was the victim's position," and that he had met with both petitioner and his father prior to the entry of the plea to discuss the posture of the case at that point. Id. at 11-12. Finally, Lazarus asserted that he did not hire an investigator because he saw no need for one, in that petitioner had acknowledged committing the acts that constituted the crimes. Id. at 13. The prosecutor also observed that petitioner's counsel "negotiated a very beneficial plea for his client" and persistently advocated for a term of fifteen years imprisonment as appropriate for his client, working "diligently in reducing the sentence." Id. at 14-15. She acknowledged that all of the necessary and appropriate motions were filed in the matter. Id. at 15. The trial court subsequently denied petitioner's motion to re-assign counsel. Id. at 16.

Here, petitioner brought his motion to substitute counsel at sentencing, three months after he entered a counseled plea of guilty. The trial court then conducted a thorough inquiry into petitioner's complaints about his attorney's performance. Indeed, there is no evidence of a breakdown in communication, and petitioner has not alleged that any conflict existed between himself and Lazarus. In fact, petitioner pleaded guilty in light of overwhelming evidence to a reduced sentence. Petitioner's claim that the trial court denied his right to counsel when it denied his motion to substitute counsel is wholly meritless. The Appellate Division thus did not run afoul of clearly established federal law. Accordingly, this claim must be denied.

### 4. Harsh and Excessive Sentence

In his final ground for habeas relief, petitioner argues that the fifteen-year sentence imposed was harsh and excessive. Pet. ¶ 12(4). The Appellate Division declined to reach the merits of petitioner's sentencing claim because it was waived by his plea of guilty and waiver of right to appeal. Muhammad, 41 A.D.3d at 1283 (citing People v. Lopez, 6 N.Y.3d 248, 256 (2006)). In any event, petitioner's claim is not cognizable on habeas review.

A petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. See Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977) (petitioner raised no cognizable federal

claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."). A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); accord Ross v. Gavin, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion).

In the instant case, petitioner was sentenced to a determinate term of imprisonment of fifteen years. S.M. at 24. Convicted of first-degree rape and attempted first-degree burglary, he faced terms of imprisonment of five to twenty-five years on the rape charge and three and-a-half to fifteen years on the attempted burglary charge, amounting to an aggregate, consecutive sentence of forty years. See N.Y. Penal L. §§ 130.35(1), 110.00, 140.30(3), 70.02. As such, petitioner was sentenced, pursuant to his plea agreement, to a term well within the statutory guidelines. He has thus not set forth a cognizable ground for habeas relief, and this claim is dismissed.

**IV. Conclusion**

For the reasons stated above, Tehran Muhammad, Jr.'s petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated:   August 5, 2010
         Rochester, New York